IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELIA HARPER, ADMINISTRATOR OF THE ESTATE OF ROBERT EDWARD HENRY HARPER | Civil Action<br><br>No. 2:23-CV-01433-MPK |
| Plaintiff, | |
| v. | |
| ALLEGHENY COUNTY, et al | |
| Defendants. | |

**Brief in Support of Motion to Dismiss the Amended Complaint for Failure to State a Claim.**

NOW COME Defendants Orlando Harper and Allegheny County (the "County Defendants"), by counsel, John A. Bacharach, Assistant Allegheny County Solicitor, and file their Brief in Support of Motion to Dismiss the Amended Complaint for Failure to State a Claim.

### A. Statement of the Alleged Material Facts

Plaintiff's Decedent was at material times a pretrial detainee at the Allegheny County Jail (ACJ). Amended Complaint ECF Doc. 11, ¶ 12. Prior to August 10, 2021, the Decedent was diagnosed with diabetes *Id.* ¶ 10. Upon information and belief ACJ Warden Orlando Harper was informed of Decedent's diabetes diagnosis upon intake to the ACJ. *Id.* ¶ 13. Decedent was diagnosed with Covid-19 on August 10, 2021. *Id,* ¶ 11.

Following Decedent's Covid-19 diagnosis he was removed from general population and moved to quarantine status. *Id.* ¶14. After he was moved to quarantine his condition

deteriorated. *Id*. ¶ 15. The symptoms associated with his deterioration are not specified except that Decedent could not "stand and/or move" *Id*. The date this deterioration occurred is not stated. It is alleged that the Doe Defendants 1 and 2 did not provide him with meals for multiple days during his illness. *Id*. 18.

On August 19, 2021, Decedent was transferred to Allegheny General Hospital where he died on September 12, 2021 from complications of Covid-19. *Id*. 22 – 23.

The Complaint also makes many conclusory claims that are not detailed here, but they may be summarized as general allegations about the sufficiency of ACJ medical policies and practices and Warden Harper's alleged knowledge about Decedent's medical treatment.

### B.  Plaintiff has Failed to State a Claim against these Warden  Harper

#### 1.  Warden Harper Individual Capacity

The Decedent was alleged to have been detained at the Allegheny County Jail as pretrial detainee. The United States Supreme Court has held that the Fourteenth Amendment "affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Third Circuit has applied Eighth Amendment case law to evaluate whether a claim for inadequate medical care by a pretrial detainee is sufficiently plausible under the Fourteenth Amendment. *See*, *Lenhart v. Pennsylvania*, 528 Fed. App'x. 111, 115 (3d Cir. 2013).

Under the Eighth Amendment to the United States Constitution, prison officials have a duty to provide basic medical treatment for incarcerated persons.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish a violation of this duty, a plaintiff

must prove two elements: (1) the inmate was suffering from a serious medical need; and (2) prison officials were deliberately indifferent to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1978).

A medical need is serious if it is diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference occurs if the prison official knows of and disregards an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In this regard, the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists and the official must actually draw that inference. *Id*. Without the subjective mental requirement of deliberate indifference, a prison official's conduct alone cannot constitute a violation of the aforesaid Eighth Amendment duty. *Id.*

"Deliberate indifference" is a stringent standard of fault action." *Connick v. Thompson*, 563 U.S. 51, 61–62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). Policymakers must have actual or constructive notice that a particular omission caused the alleged violation of a detainees' constitutional rights and he was deliberately indifferent to that problem. *Id.*

In this vein, a prison official, here Warden Harper, cannot be considered deliberately indifferent for not responding to inmate medical care if the inmate was receiving medical services from medical personnel. *Durmer v. O'Carroll*, 911 F.2d 64, 68-69 (3d Cir. 1993). Similarly, a prison official is not deliberately indifferent if the official defers to the judgment of medical personnel about what medical services are needed. *Id.* at 69. Accordingly, unsuccessful medical treatment, negligence, or even medical

malpractice by a medical provider is insufficient to establish deliberate indifference on the part of a prison official. *Id.*

There is no *respondeat superior* liability in Eighth Amendment medical claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Therefore, a prison official sued in his individual capacity cannot be held liable for acts of subordinates merely because of the official's supervisory position. *Id.* Rather, the plaintiff must show the official was personally involved in the events or occurrences that the plaintiff claims were unlawful. *Id.* Personal involvement can be shown through personal direction or through actual knowledge and acquiescence. *Id.* A lack of personal involvement by the official in question is fatal to the plaintiff's claim against that individual. *Atkinson v. Taylor,* 316 F.3d 257, 271 (3d Cir. 2003).

Here the Decedent was under medical care. There are no plausible facts that Warden Harper knew that the care he was receiving was not consistent with good medical practice. Moreover, even if Decedent's care amounted to malpractice, there are not facts, as opposed to conclusory speculation, that Warden Harper, a medical layman, knew or should have know it. The ACJ houses 1,500 inmates. It is not possible for Warden Harper or any other correctional ACJ employee to be able to know what medical treatment is being provided and to evaluate its efficacy.

**2. Supervisory Liability**

While the foregoing test sets forth the general requirements for finding that a state actor has violated an individual's rights in the prison-suicide context, there may be additional considerations if, for example, a plaintiff seeks to establish the liability of a supervisor. More particularly, courts have identified two general instances in which either the conduct of a supervisor-defendant or a particular policy/procedure of that

4

supervisor warrants a finding of supervisory liability for a constitutional tort. *Barkes v First Correctional Medical Inc.*, 766 F.3d 307 at 316. First, supervisory liability may attach if the supervisor personally participated in violating the prisoner's rights, personally directed others to violate them, or had personal knowledge of and acquiesced in a subordinate's unconstitutional conduct. For reasons discussed immediately above, no such liability has been pled. Second, liability may attach if the supervisor, with deliberate indifference to the consequences of a policy or procedure, established and maintained that policy or procedure which, in turn, directly caused constitutional harm. *Id.*

In the second instance—*i.e.*, the policy/procedure context—a plaintiff must prove the following four elements to establish supervisory liability:

1. the supervisor's policy or procedure in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation;

2. the defendant-supervisor was aware that the policy or procedure created the aforesaid unreasonable risk;

3. the defendant-supervisor was indifferent to that risk; and

4. the constitutional injury was caused by the failure to implement an appropriate supervisory policy or procedure.

*Id.* at 317-323.

At a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id. Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997).

Once again, there can be no liability without a subjective, deliberate indifference by the supervisor. *Id.* at 323. An objective indifference is insufficient. *Id.*

There are no facts that Harper had in place any policy related to the care of inmates with COVID-19 infections that prevented Decedent from receiving health care or that restricted him from being placed appropriately. No facts establish that Warden Harper prevented or interfered with Decedent's medical care for Covid-19. The Plaintiff does plead that Decedent should have been transferred to Allegheny General Hospital sooner, but there are no facts that connect Warden Harper to that medical decision. There are no facts that establish that the Decedent's demise was the result of any deliberately indifferent policy or practice placed or tolerated by Warden Harper. Whether a person with Covid-19 should be treated at a hospital is a medical decision. There are no facts from which it can be inferred that Warden Harper's individual conduct delayed Decedent's transfer to AGH.

### 3. Failure to Train

Warden Harper incorporates the discussion below regarding the Plaintiff's failure to train claim.

### 4. Warden Harper Asserts the Defense of Qualified Immunity

A government official performing discretionary functions is generally immune from suit and/or shielded from civil liability as long as his actions do not violate a clearly established constitutional right of which a reasonable person would have been aware. *Henry v. City of Erie,* 728 F.3d 275, 280 (3d Cir. 2013). A qualified immunity analysis begins, therefore, with the threshold question of whether the facts, viewed most favorably to the party asserting the injury, show the official's conduct violated a certain right.

*Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002). If the plaintiff cannot establish that there was a constitutional violation at all, then no further inquiry (*i.e.*, an inquiry into whether the right was a clearly established one) is necessary. *Id.*

As noted above, when an ill inmate is receiving medical care a correctional employee may is not responsible if that care is inadequate or even amount to medical malpractice in the absence of unusual circumstances, such as the correctional office prevents an inmate from receiving medical or he has knowledge that adequate medical care was not being provided that would be obvious to a laymen. It is clear from the complaint that the Decedent was receiving medical care. The alleged deterioration of his medical condition occurred over a few day days and it involved a medical judgment that the Decedent's condition had deteriorated to the extent that the ACJ could not provide medical care and he had to be transferred to a hospital. Not only are there no facts that support a claim that Warden Harper had any material role in these medical decisions but it is implausible to infer that he was making medical decisions.

Specificity is important when evaluating Qualified Immunity. *Kisela v Hughes*, 138 S. Ct. 1148, 1152 (2018) citing *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2018). *Kisela* dealt with an alleged Fourth Amendment violation involving the use of deadly force by a police officer. The Supreme Court noted that specificity was particularly important in these cases because of the difficulty of providing clear rules in these cases. Noting that " … general rules … do not by themselves create clearly established law outside an 'obvious case" *Id*. The same can be said in cases such as this involving the warden of a large jail evaluating correctional medical judgments. It cannot be gainsaid that medical judgments are the province of those trained, experienced and licensed to practice medicine. A jail warden is

not qualified to evaluate medical decisions, particularly those involving a disease like Covid-19 that can have benign to deadly results.

### C. Municipal Defendant: Allegheny County

1. **The Relevant Law**

A local government unit such as Allegheny County is not subject to civil rights liability under the theory of *respondeat superior*. *Monell v. Dept. of Soc. Servs. of City New York,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a government unit may be subject to liability if the plaintiff proves the government unit had an official policy or custom that caused a constitutional violation. *Id.* at ¶690-691. There must be a direct causal link between the policy or custom and the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Along these lines, a plaintiff must show that the government unit, through deliberate conduct, was the moving force behind the claimed injury. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In short, the plaintiff must prove a constitutionally defective policy or custom, deliberate indifference, and causation. *Id.*

Consequently, in a, the plaintiff cannot prevail on a policy-or-custom claim without proving that the government entity, by virtue of its policy or custom, was deliberately indifferent to the inmate's serious medical needs—*i.e.*, a particular vulnerability to COVID-19—and did, in fact, cause the detainee's injury. *City of Canton,* 489 U.S. at 385-86; *Colburn v. Upper Darby II*, 946 F.2d 1017, 1027-28 (#rd Cir 1991).

2. **Plaintiff's Claim against Allegheny County is legally deficient.**

Plaintiff alleges that Allegheny County, by policy or custom, failed to provide Decedent constitutionally adequate protection from Covid-19. Primarily, it appears

8

Plaintiff contends that, because of some County policy or custom, Decedent was not properly assessed and monitored. Plaintiff contends the County is therefore liable for Decedent's death. For the reasons that follow, Plaintiff's policy-or-custom claim must fail at this stage.

The facts pled in the Complaint do not support the conclusion that there existed a County policy or custom that denied Decedent access to appropriate care for his Covid-19 infection or that denied him proper monitoring (*e.g.*, housing, oversight) so as to protect him from the risk of death after contracting a Covid-19 infection.

Moreover, to whatever extent Plaintiff wishes to contend that the health care that was provided to Decedent was unsuccessful, Plaintiff's complaint is more in the nature of a negligence or medical malpractice claim, not a constitutional tort. *See Durmer v. O'Carroll,* 911 F.2d 64 at 68-69 (3rd Cir. 1993) (indicating unsuccessful medical decisions do not establish deliberate indifference). Additionally, while the County contends the averments do not even support a claim of negligence, it is certainly true that the facts do not reasonably support a finding that the County, through some policy or custom, acted with deliberate or reckless indifference. That Decedent ultimately died is not a material legal fact. Covid-19 is a disease that killed more than one million people in the United States. The death of a person who contracted Covid-19 alone does not create a cause of action in the population at large nor in a person confined to a jail. Here there are no facts that are sufficient to establish a plausible claim that that Allegheny County was recklessly or deliberately indifferent to him, his serious medical needs, or any of his rights. *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3rd Cir. 1988); *Ferencz v. Medlock*, 2014 WL 3339639 at 3.

It is noteworthy that the Plaintiff does not plead anything about lives lost at the ACJ due to COVID-19. There is a reason. There was only one inmate life lost due to COVID-19. https://www.alleghenycounty.us/Government/County-Jail/ACJ-and-COVID [1] The Plaintiff's argument that the Defendants' Covid-19 care policies or practices were constitutionally deficient cannot, therefore, be viewed a plausible in light of this fact.

### 3. The failure to train claim also fails.

Failure to train may form a basis for Section 1983 liability by a municipality if it amounts to deliberate indifference to the rights of persons with whom government officials come in contact. *City of Canton v. Harris* 489 US 378, 109 S. Ct. 1197 (1989). A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Colburn II*, 946 F.2d at 1030. This means that the Plaintiff must (1) "identify specific training not provided that could reasonably be expected to prevent the suicide that occurred" and (2) "demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives." *Id.* Deliberate indifference may be shown by

---

[1] The Court may take judicial notice of information posted on official public websites of government agencies. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Burk v. Rankins*, No. 4:22-CV-01499, 2022 WL 17553010, at *3 (M.D. Pa. Dec. 9, 2022)

repeated conduct violating persons rights, or if the risk is obvious. *Id*. However, a failure to train theory rests on fragile grounds. *Connick v. Thompson*, 563 US 51, 61, 131 S.Ct 1350, 1350-1359-1360 (2011). Only when the failure to train is so obvious that it amounts to deliberate indifference can it be a policy or custom of the municipality. For prior incidents put a municipality on notice with the need for training they must be similar to the facts and issue. *Id*. (Prior failures to disclose exculpatory evidence are not sufficiently similar because they did not involve scientific evidence. *Id*.) Moreover the need to train professionals such as attorneys, physicians, nurses, and the like is not obvious. They all have a professional training, experience, and continuing training requirements in their profession.

Decedent's "failure-to-train" claim against the Defendants also fails because the claim is premised on conclusory assertions unsupported by allegations of fact. *See, e.g., Ndaula v. Clinton Cnty. Corr. Facility*, 2020 WL 7773902, at *6 (W.D. Pa. Dec. 40, 2020) (bare allegations without explanation are insufficient to allege failure to train). Here the Amended Complaint does not specify with particularity any flaws in the training provided under the ACJ's . *See, e.g. Coleman v. Wetzel*, 2015 WL 10381754, at 7 (M.D. Pa. Dec. 28, 2015) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). There are no facts alleged that Warden Harper or Allegheny County had knowledge of any prior constitutional violations allegedly committed pursuant a policy or practice of denying or delaying the treatment of ACJ inmates with Covid-19 infections. Indeed, as mentioned above, that there was only one Covid-19 death at the ACJ over the entire course of the pandemic contradicts any claim of deliberate indifference by any Defendant.

Because the averments of the Complaint do not demonstrate deliberate or reckless indifference to Decedent's needs or rights, a constitutionally defective policy or custom,

or causation, Plaintiff's policy-or-custom claim must fail.  *Monell,* 436 U.S. at 690-91; *City of Canton,* 489 U.S. at 385-86; *Colburn II*, 946 F.2d at 1027-28.   There are no facts that that ACJ medical personnel lacked adequate training  and that was a cause of Decedent's death by a virus that was endemic in the community.

### D. Count III should be dismissed because the Pennsylvania Wrongful Death Act provides a statutory remedy for the beneficiaries of a deceased person for their losses, but  42 U.S.C. §1983 does not allow a cause of action for violations of the rights of another person.

Count III is a claim for Wrongful Death under 42 Pa.C.S. §8301. The statute provides a statutory remedy for the beneficiaries of a deceased person to recover for the losses they sustained caused by the death of their relative.

> A wrongful death action may be brought by the personal representative of persons entitled to receive damages for wrongful death under the statute— "only for the benefit of the spouse, children or parents of the deceased." 42 Pa.C.S.A. § 8301(b), (d); *Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1, 4 (1994).

*Massey v. Fair Acres Geriatric Ctr.,* 881 F. Supp. 2d 663, 669 (E.D. Pa. 2012).

A wrongful death action, therefore, provides a remedy for the beneficiaries of a deceased person for losses they incurred caused by the alleged tortious conduct of the defendant. It provided no remedy for the Deceased. No such cause of action exists under 42 U.S.C. 1983.

As a rule, "a litigant may only assert his own constitutional rights or immunities." *United States v. Raines*, 362 U.S. 17, 22 (1960); see also *McGowan v. Maryland*, 366 U.S. 420, 429 (1961) (quoting *Raines*); *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (quoting *Raines* and *McGowan)*. "[O]ne cannot sue for the deprivation of another's civil rights." *O'Malley*, 477 F.2d at 789. "Only persons actually deprived of their individual civil rights can redress such rights." Id. at 789 n.2 (quoting *United States v. Biloxi Mun. Sch.*

12

*Dist.*, 219 F. Supp. 691, 694 (S.D. Miss. 1963), aff'd, 326 F.2d 237 (5th Cir. 1964)); *Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 669 (E.D. Pa. 2012) (plaintiff individually has no standing to vindicate his mother's civil right).

Here, the civil right allegedly violated was the Decedent's right to medical care while in the custody of the ACJ. The ACJ has no duty to provide and the Decedent's beneficiaries have no right to receive medical from the ACJ. To the extent that <u>the Decedent's</u> Fourteenth Amendment right to medical care was violated his estate is entitled to recover the damages <u>he</u> sustained caused by that violation. The civil rights of his beneficiaries under the Wrongful Death Act were not violated by these Defendants. They do not, therefore, have any right to recover for any damages that they may have sustained as the result of the alleged violations of the Decedent's civil rights because his right is not their right. Consequently, no claim under 42 U.S.C. § 1983 is stated for the losses sustained by the persons claiming Wrongful Death Act damages in Count III of the Amended Complaint.

### E.  Conclusion

The Plaintiff has failed to state a claim upon which relief can be granted. Defendants Orlando Harper and Allegheny County respectfully demand that the court dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

A  JURY TRIAL IS DEMANDED         Respectfully submitted,

*/s/ John A. Bacharach*
John A. Bacharach
Assistant County Solicitor
Pa. I.D. #19665
ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219

(412) 350-1053
John.Bacharach@alleghenycounty.us